Wood *vs.* Duncan.

WOOD *VS.* DUNCAN.

1. The act of eighteen hundred and seven, (Aik. Dig. 209,) inhibits all contracts, the object of which is to secure the payment of money or other thing, lost upon a horse race, or other description of gaming.

2. The maxim, *in pari delicto potior est conditio possidentis,* does not avail one who is no party to the transaction, in which the fault is alleged.

3. Money deposited as a wager, while in the hands of the stakeholder—either before or after the happening of the event upon which the forfeiture depends—is *in transitu;* and may be arrested by the bailor.

Error to the Circuit court of Benton county.

Assumpsit, for money deposited as a wager—tried by *Shortridge,* J.

The defendant in error brought an action of *assumpsit,* in the Circuit court of Benton, to recover of the plaintiff the sum of three hundred dollars, the amount of a *wager,* deposited in his hands as a *stakeholder,* to be paid over, according as the event of a horse race agreed to be run between the defendant and a third person, might ascertain the one or other to be entitled to it.

To the declaration, there was a demurrer, which being overruled, the case was tried on the *general issue.* On the trial, the presiding judge sealed a bill of exceptions, from which it appears that the defendant and Erby Boyd, each wagered with the other, the sum of three hundred dollars, upon the event of a horse race thereafter to be run; each deposited that sum in the hands of the plaintiff, to be paid over to the winner. The race was run—Boyd's horse was the successful competitor, and the result so announced by the judges, when the defendant gave notice to the plaintiff not to pay over the wager to Boyd, and demanded the same; which demand was disregarded.

The court, on motion of the counsel for the plaintiff in error, refused to instruct the jury, that the facts proved did not entitle the defendant to a recovery, but charged them, "that if they believed from the evidence, that the defendant, as stakeholder, had received monies to abide the event of the race, from the plaintiff, and before the same was paid over by the stakeholder to the winning party, he, the said defendant, had been notified not to pay over the same, that the plaintiff was entitled to recover." To which refusal to charge, and charge as given, the plaintiff in error excepted, &c., and here specially assigns for error, the decision of the court upon the questions of law determined against him.

*Chilton*, for plaintiff in error.
*Martin*, contra.

COLLIER, C. J.—By the act of eighteen hundred and

Wood *vs.* Duncan.

seven, entitled "an act to prevent the evil practice of gaming," (Aik. Dig. s. 1, p. 209,) it is enacted, that "all promises, agreements, notes, bills, bonds, or other contracts, judgments, mortgages, or other securities, or other conveyances whatsoever, made, signed, given, granted, drawn or entered, or executed by any person or persons whatever, after the passing of this act, where the whole or any part of the consideration of such promise, agreement, conveyance or security, shall be for money, or other valuable thing whatsoever, laid or betted," &c., "at any horse race," &c., "or for reimbursing or re-paying any money knowingly lent or advanced at the time or place of such play, horse racing," &c., "shall be utterly void and of no effect, to all intents and purposes whatsoever." This statute is drawn with great particularity, and evidently designed, as its terms indicate, to inhibit all contracts, no matter by what solemnity evidenced, the object of which may be to secure the payment of money or other thing lost upon the event of a horse race, or other description of gaming.

It must be remembered, that this is an action against the stakeholder, who sets up no claim whatever to the money. The agreement of the defendant and Boyd, by which the money was deposited in the hands of the plaintiff in error, had not been *entirely* executed by a payment to Boyd, before the defendant demanded its return to him, and it may never be consummated. If the plaintiff was to refuse, Boyd could never coerce him: the act cited will always operate as a *veto* against a judgment in his favor. But the same obstacle to a recovery does not interpose itself against the defendant—

he has parted with his money upon an agreement invalid in point of law, and placed it in the hands of one who is no party to that agreement, and claims no interest, as derived under it. Upon what acknowledged principle can he assert a right to retain it?—not as the agent of Boyd, for he, it has been shown, never was in possession of it, and could not, of course, deposit it in the keeping of any one. The agreement to wager between the defendant and Boyd, could not make the plaintiff the agent of the latter, for the law does not recognise an agent who is not amenable to his principal; and we have already said, that it will not lend its authority to Boyd against the plaintiff.

It is no answer for the plaintiff to say to the defendant, that in depositing with him the money he now seeks to recover, he offended against the policy of the law. The maxam, *in pari delicto potior est conditio possidentis,* will not avail one who was himself no party to the transaction in which the fault is alleged. If Boyd had received the stake, and the defendant were seeking a recovery of him, he might successfully resist the demand, by calling to his aid the influence of that maxim. But the defendant has parted with his money, without the inducement of a consideration, either good or valuable, and upon an agreement void by the law : the plaintiff retains it, without any claim, either in his own right, or on account of another ; according to well settled principles, he is bound *ex æquo et bono,* to refund it to him who once had possession, and has never, by any legal act, parted with the right.

The precise question arising in this case, was largely

discussed in Vischer vs. Yates, (11 Johns. R. 23,) before the Supreme Court of New York; and Mr. Chief Justice Kent collates and reviews, with his accustomed force and clearness, the English and American cases on the subject. His conclusion is, that the action is founded on the disaffirmance of the unlawful contract, and on the ground that it is void, and that the money ought not to pass to the winner. After the event has happened, and the money paid to the winner, it is then too late for the loser to reclaim the money from him, for then the maxim, *in pari delicto,* &c. applies; but before the event has happened, either party may repent, and re-call the deposit-money, even out of the hands of his opponent; and if the money is still with the stakeholder, the happening of the event is immaterial, and either party may at any time arrest it, for it is still *in transitu.* The decision of the Supreme court, it is true, was overruled by the *Court of Errors,* by a vote of fifteen Senators against six;—neither of the Judges of the Supreme court, nor the Chancellor, appear to have been present. *Mr. Senator Sandford,* alone, delivered an opinion, which, though a fine specimen of metaphysical reasoning, falls far short of overturning the very perspicuous and forcible legal argument of the learned Chief Justice.

We have not thought it necessary to consider more *particularly,* the correctness of the judgment on the demurrer to the declaration, inasmuch as the view we have taken of the charge to the jury, covers every assignment of error, and is decisive of the case.

The judgment must be affirmed.